IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALL AROUND SPIRAL, INC., <br><br> Defendant. | 1:14-cv-782 (JCC/IDD) |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. [Dkt. 40.] On August 26, 2015, after hearing oral argument of counsel, the Court granted the motion in part and denied it in part. This memorandum opinion memorializes the Court's reasoning.

### **I. Background**

The following facts are taken from the parties' Local Rule 56(B) statements and from the parties' Joint Stipulation of Uncontested facts. (See Joint Stipulation of Uncontested Facts [Dkt. 36]; see also Pls.' Mem. [Dkt. 41] Stmt. of Facts ("SOF") at 2-6; Def.'s Mem. [Dkt. 48] SOF at 2-4.) These facts are undisputed unless otherwise indicated.

Plaintiffs are the separate and individual Boards of

1

Trustees for the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Energy Management Institute Committee ("NEMIC"), the Sheet Metal Occupational Health Institute Trust Fund ("SMOHI"), and the Stabilization Agreement for the Sheet Metal Industry Trust Fund ("SASMI") (hereinafter collectively referred to as "Plaintiffs" or the "Funds").[1] (Joint Stip. ¶ 1.) The Funds are comprised of individual trustees who are fiduciaries with respect to the Funds, as defined by section 3(21)(A) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(21)(A), and are collectively the plan sponsors. (Id. at ¶¶ 1-2.) The Funds are governed pursuant to the terms of the Trust Documents that established the Funds. (Greene Decl. [Dkt. 42] ¶ 6.) The Funds provide various benefits to eligible employees of employers who contribute payments to the Funds. (Id.) The Funds are administered from Fairfax, Virginia. (Joint Stip. at ¶ 3.)

Defendant All Around Spiral, Inc. (hereinafter referred to as "Defendant" or "AAS") was an "employer" within the meaning of section 3(5) of ERISA, 29 U.S.C § 1002(5), and 29 U.S.C. § 152(2), and was engaged in an "industry affecting

---

[1] ITI and SASMI are jointly-trusteed trust funds created and maintained pursuant to section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c), and are "multiemployer plans" as defined in section 3(37) of ERISA, 29 U.S.C. § 1002(37). (Joint Stip. ¶ 4.) NEMIC and SMOHI are jointly-trusteed trust funds created and maintained pursuant to section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c). (Id.)

commerce," within the meaning of sections 3(11)-(12) of ERISA, 29 U.S.C. §§ 1002(11)-(12). (Joint Stip. ¶ 5.) Defendant is a New York corporation with its principal place of business in Ronkonkoma, New York. (Id. at ¶ 6.) Defendant employs employees who are represented by the Sheet Metal Workers' International Association Local Union No. 28 ("Local Union No. 28"), a labor organization representing employees in an industry affecting interstate commerce, for the purposes of collective bargaining. (Pls.'s SOF ¶ 7.)

Local Union No. 28 entered into a collective bargaining agreement (the "CBA") with non-parties Sheet Metal & Air Conditioning Contractors Association of New York City, Inc. and SMACNA of Long Island, Inc., and those employers who subscribe thereto. (Greene Decl. ¶ 8.) Under the CBA, Defendant was obligated to contribute to ITI, NEMIC, and SMOHI on behalf of Defendant's covered employees who are employed in any jurisdiction of Local Union No. 28. (Id.)

The amount of Defendant's contribution to the Funds is calculated based on remittance reports, which must be prepared monthly by Defendant as the contributing employer. (Joint Stip. ¶ 7.) Without the information contained in the remittance reports, the Funds cannot determine (1) the amount of monthly contributions due to the Funds and (2) an employee's eligibility for benefits. (Id. at ¶ 9.) However, because Defendant, as the

3

contributing employer, creates and prepares the monthly remittance reports itself, the Funds must initially rely upon the honesty and accuracy of Defendant, both in reporting the hours worked and paid, and in reporting the contributions owed on behalf of their employees. (Id. at ¶ 8.)

## II. Legal Standard

Summary judgment is appropriate only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (stating the opposing party must "come forward with specific facts showing that there is a genuine issue for trial."). "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Hughes v. Bedsole, 48 F.3d

1376, 1381 (4th Cir. 1995) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." <u>Brock v. Entre Computer Ctrs., Inc.</u>, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. Where there is conflicting evidence, the court must credit the evidence of both sides and acknowledge that there is a genuine issue of material fact that cannot be resolved by summary judgment. See <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1868-69 (2014) (stating that summary judgment is inappropriate where each side has put forward competent evidence that raises a dispute about a material fact).

### III. Analysis

Defendant argues that genuine issues of material fact exist as to the following: (1) whether Defendant is bound by a CBA that requires Defendant to pay contributions to the Funds (Def.'s Opp'n at 5-6); (2) at what point in time Defendant was

5

no longer required to contribute to the Funds (Id. at 6-7.); and (3) Plaintiffs' calculation of damages (Id. 7-8).

The Court must deny Plaintiffs' motion for summary judgment in part because Plaintiffs have not met their burden to show that there is no genuine issue of material fact for trial. In fact, a key issue remains to be decided: under what CBA was Defendant bound, and for how long? In support of their motion for summary judgment, Plaintiffs attached a CBA. (Greene Decl., Ex. B.) The CBA states it is effective September 15, 2011 and terminated July 31, 2014. (Id. at 1.) There is no signatory page attached to the CBA, nor does the CBA list any of the employers to which it applies. Therefore, the Court has no way to determine whether Defendant is bound by this CBA.[2] Defendant has "show[n] that the materials cited do not establish the absence . . . of a genuine dispute[.]" See Fed. R. Civ. P. 56(c)(1)(B). Accordingly, summary judgment must be denied for this reason alone.

---

[2] In their reply brief, Plaintiffs cite to the deposition of Sharon Kern ("Kern"), president of AAS, in which she allegedly admits the CBA provided in support of Plaintiffs' motion is the CBA to which they were bound as well as Defendant's answer admitting the same. (Pls.' Reply [Dkt. 49] at 6.) A review of those materials does not show that such an admission was made. As discussed infra, AAS does not dispute that it was bound by a CBA; the question is by what CBA was it bound. Kern's deposition and Defendant's answer do not admit that the CBA submitted is, in fact, the CBA in question, nor is there anything from the face of the CBA that would allow the Court to conclude that this is the relevant CBA.

Additionally, Plaintiffs have not established that there is no genuine issue of material fact as to the period of time they are entitled to receive contributions from Defendant. Plaintiffs seek contributions to the Funds from the second week of January 2014 through December 2014. (Green Decl. ¶ 15.) Defendant does not dispute that it was bound by a CBA to make contributions to the Funds and does not dispute the amounts Plaintiffs seek for September 2013 through January 2014. (Def.'s Opp'n at 6.) Therefore, the Court granted partial summary judgment on this basis in the amount of $5,372.40 for this time period only. However, Defendant disputes that it owes any payments after January 2014. (Id.) The CBA Plaintiffs provided was effective only through July 31, 2014. (Green Decl., Ex. B.) Defendant has also produced a July 20, 2014 letter sent from SASMI stating that Defendant's status as a SASMI contributing employer was terminated effective August 1, 2014. (Milman Decl. [Dkt. 48-1], Ex. B, at 1.) Therefore, there is a genuine issue of material fact as to when Defendant's obligations under the CBA terminated.[3]

---

[3] Defendant argues that it is not liable for any contributions after the second week of January since Local 28 pulled all manpower from Defendant in January 2014. (Def.'s Opp'n at 6.) In support, they attach a bulletin sent to Local 28 Contractors stating that all Local 28 manpower had been removed from Defendant. (Milman Decl., Ex. A.) As the Court understands, Defendant argues that it had no responsibility to continue making contributions to the funds after the second week of

7

Finally, summary judgment must also be denied because Plaintiffs did not quantify the alleged contributions after January of 2014 by any identifiable measure.[4] Plaintiffs demand $22,806.89 from the second week of January 2014 through December 2014. (Pls.' Mem. in Supp. at 5.) The payroll records they have submitted in support of this claim are from January 1, 2014 through May 19, 2015 for approximately fifty-eight employees. (Naji Decl. [Dkt. 43], Ex. B.) However, Plaintiffs do not detail how the delinquent contributions were calculated or for which employees. (See Greene Decl. ¶¶ 14-15.)

In reply, Plaintiffs argue that because Defendant did not submit remittance reports to the Funds for all of 2014 (excluding the first week of January) and Defendant only provided yearly payroll reports in discovery, Plaintiffs cannot break down the contributions by month. (Pls.' Reply at 8.) "All Around has, or should have, the information needed to provide a breakdown by employee." (Id.) If that is the case, then, Plaintiffs should have obtained such information in

---

January because Local 28 no longer worked for it, yet it never explicitly makes that argument or cites any legal authority in support. Regardless, Defendant has shown there is a genuine issue of material fact with respect to the date its obligations to the funds terminated because the CBA does not show that Plaintiffs are entitled to payments through December 2014.

[4] Defendant also claims it is "judgment proof" because it does not have enough assets to cover any purported liability. This is also at issue and not ripe for determination on summary judgment.

8

discovery so they could successfully meet their burden on summary judgment. Plaintiffs argue that they have "wide discretion" to determine contributions owed in the absence of required remittance reports. (Pls.' Reply at 9.) The cases they cite in support, however, are distinguishable in two respects.

First, the cases involved default judgments, where the court does not have the benefit of a full record to determine damages. See Int'l Painters & Allied Trades Indus. Pension Fund v. 3 R Painting and Contracting Co., Inc., No. RDB-12-272, 2013 WL 424694, at *4 (D. Md. Jan. 31, 2013) (stating the "default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party.") (citation and internal quotation marks omitted); Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. 5 Star Washer Serv.,Inc., No. 1:11cv0331, 2011 WL 5190852, at *4 (E.D. Va. Sept. 14, 2011). Second, the discretion afforded to plaintiffs is not unbounded. In both 3 R Painting and 5 Star Washer, the fund administrators detailed the process by which they estimated contributions, which included some estimation based on previously filed reports. See 3 R Painting, 2013 WL 424694, at *5 (noting amount of unpaid contributions calculated by averaging the three months of contributions prior to the first month in which no report is received); 5 Star Washer, 2011 WL

9

5190852, at *4 (noting delinquent contributions calculated by assuming covered employees worked the same amount of hours as the last month a report was submitted by defendant).

Here, Plaintiffs provide no detail as to how they calculated the alleged delinquent contributions beyond stating they "us[ed] payroll records provided to the Funds" by Defendant. (Green Decl. ¶ 14.) Therefore, there is a genuine issue of material fact as to the accuracy of the claimed contributions. See Trustees of the Plumbers and Gasfitters Local 5 Ret., Savings Fund v. Conditioned Air Sys., Inc., Civil No. CCB-12-730, 2014 WL 1292105, at *11 (D. Md. Mar. 28, 2014) ("Defendants claim plaintiffs are not entitled to summary judgment because the plaintiffs have failed to identify which estimating method they used and how they calculated the claimed amounts, thus creating a genuine dispute as to the accuracy of the estimations. The court agrees that the defendants have raised a genuine dispute of fact as to the accuracy of the estimations[.]").

Accordingly, the Court must deny the motion for summary judgment in part because there are genuine issues of material fact as to the CBA that binds Defendant, for what period of time Defendant was bound, and as to the accuracy of the claimed contributions. In its opposition, Defendant asks for mediation of this dispute, which counsel confirmed during

the hearing.  (Def.'s Opp'n at 8.)  The Court believes this dispute is ripe for a settlement conference and will direct the parties to schedule a settlement conference with the Magistrate Judge assigned to this case, mindful that the trial date is quickly approaching.

## IV. Conclusion

For the foregoing reasons, the Court granted in part and denied in part Plaintiffs' Motion for Summary Judgment.

An appropriate Order shall issue.

|  |  |
|---|---|
| | /s/ |
| August 26, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |